November 5.
JUDGE! CARR.‡
This is a bill filed by Christian and others, as next of kin and distributees of John Fleet, against Martin Shearman *to set aside a Deed and Will executed by E'leet, conveying and devising all his estate, real and personal, to the said Shearman.
The bill charges, that Fleet was, at the time of executing the Deed and Will, and had long been, utterly incapable of making a contract, or disposing of his property: that the Defendant obtained these instruments by fraud and imposition ; and prays that they may be annulled, and that Shear-man may be decreed to deliver up the real and personal property of Fleet, to be divided among them according to Law ; and that he may account before a Commissioner for the rents and profits of the land, the hires of the slaves, &c.
Shearman answers, averring that E’leet was of perfect capacity and ability to make contracts, and dispose of his property; that he made a contract with the Defendant, by which he agreed to convey to him his whole estate, in consideration of being maintained by the Defendant during his life: that in execution of this contract, the Deed and Will were made: that the contract was perfectly fair, and that the Defendant has fully performed his part by maintaining Fleet during his life.
While the suit was yet at Rules, Shear-man died, and it was revived against Ezekiel G. Shearman, administrator with the will annexed, and Filis, and Jno. Tapscott, devisees of Martin Shearman.
They answer, expressing their assent to a revival, and their wish for a decision. Issues were made up to try the capacity of Fleet, and the fairness of the Deed and Will.
The Jury found that Fleet was not of sufficient capacity to dispose of his property, by Deed or Will, and that both these papers were obtained by fraud. This verdict being returned into the Court of Chancery, without objection that Court pronounced the Deed and Will null and void, and ordered that they be surrendered, to be cancelled. It was further ordered, that such of the Defendants as had in possession the lands or slaves in the papers mentioned, ^should surrender the same to the Plaintiffs, and such Defendants as claim as distributees of Fleet. The Court further ordered, that E. G. Shearman, administrator with the Will annexed of Martin Shearman, do render before a Commissioner an account of the administration of the said Shearman on the estate of Fleet, comprising in such account, to the debit, of the said Martin, the hire of slaves, and all the personal estate (except the slaves which may be surrendered under his decree) that the said Martin derived or claimed title to, under the said Deed or Will: that he also render an account of the rents and profits of all the lands and real estate claimed or held under the said papers, accruing in the life of the said Martin: that he also render an account of his administration on the estate of the said Martin; also an account of the hires and profits of such of the slaves claimed under the said papers, as may have come to his hands; and if any of them have been sold by him, an account of the value and price received therefor, and when and how disposed of.
In pursuance of this order, the Commissioner made a very voluminous report; of which it seems only necessary to notice here, that part which stated the account of Martin Shearman as executor of Fleet, up to the death of the said Martin. The balance against the said executor stated to be $5,71401 cent, with interest, &c. The Commissioner also seated the account of E. G. Shearman, as administrator .of Martin Shearman, making a balance against the said administrator of $12,712 41 cents. The last balance is made by excluding from the credits of the administrator, all sums disbursed by him, in payment of the proper debts of Martin Shearman, and especially the sum of $4,151 27 cents, paid by the said administrator, on an execution issued against him on a stay-bond executed by Martin Shearman. The exclusion is on the ground that the debt due from Martin Shearman to Fleet’s estate, being due from him as executor, takes precedence of all his proper debts.
*It is proper to mention, that before this report was acted upon, the Plaintiffs filed a supplemental bill, making Armstrong a Defendant, upon the ground that after the Deed and Will of Fleet were set aside, he had been appointed by the County Court of Lancaster, administrator of Fleet, and, as such, ought to be a party to the suit. The administrator answered, consenting to adopt, and be bound by all the proceedings which had been taken in the case; claiming his rights as administrator, and offering to abide the Decree of the Court.
The cause coming on to be heard (as the Decree expresses it) “on the papers formerly read, an exhibit showing that Martin Shearman, the testator of the Defendant Ezekiel G. Shearman, administrator, &c. of Martin Shearman, who qualified as executor of John Fleet, to pay the administrator of the said Fleet, $5,714, &c. A *610 sum is also decreed against Ezekiel G. ■ Shearman individually, for the amount of rents and profits of the land and hires of the slaves received by him after the death of Martin Shearman.
From this Decree, the appeal is taken by Ezekiel G. Shearman alone.
In the record which has come up to this Court, there is.no such paper as the exhibit (so particularly noticed by the Chancellor in his Decree,) showing that Martin Shearman duly qualified as executor of Fleet. There can be no rational' doubt, •that this omission is the error of the Clerk of the Chancery Court; nor can we doubt, that a Certiorari would supply the defect. Eor, if the identical paper which was before the Chancellor should be lost, it could be easily supplied; as it was but a copy from the records of Lancaster 'Court. It is equally clear to me, that we ought not to proceed in the cause without a Certiorari, unless upon the ground that the ■ exhibit is unnecessary to a decision, or the admission, (which I understood the Counsel for the Appellants to make) that the exhibit might be considered as before us, if it could be brought up by the Certiorari. *My own opinion is, that we do not need the exhibit to establish the fact, that Martin Shearman qualified as executor of Fleet. It is a settled principle, that nothing need be proved, which is admitted by the ‘ parties; and this fact is, I think, clearly so admitted. After annulling the Deed and Will, the Court of Chancery ordered, Martin Shearman’s administrator to render an account of the said Martin’s administration on the estate of Fleet. If this order was not made, on the admission of the parties that M. Shearman was executor of Fleet, it certainly could not have been acted upon by the Commissioner, without either an admission of that fact, or an exception taken to the report, because M. Shearman was never executor of Fleet. In the Commissioner’s report, we see a long account headed thus: “Dr. the estate of John Fleet, dec’d, in account with M. Shearman, his executor.” This account is extended from the death of Fleet to the death of M. Shearman; a space of thirteen years. The executor 1 is regularly charged with the property which came to his hands, and credited by his disbursements from year to year, together with his commission's, &c. ; the whole showing the usual course of administration of an estate. To all this, there is no exception that M. Shearman was not executor; but on the contrary, an express admission of the fact by E. G. Shearman ; 1st, in page 3, of the report, where the Commissioner states, “that M. Shearman is debited, in his executorial account, with the hires of Fleet’s slaves, from the consent of the Plaintiffs and the defendant E- G. Shear-man, except as to the hires of Daniel, Harry and Lucy,” &c. 2d. The fact is admitted by E. G. Shearman in page 81, where he claims (by a special statement made at his request) credits for M. Shear-man, as executor of Fleet, to the amount of $633 83 cents. I desire no better evidence than this, to establish the fact (as between these parties) that M. Shearman qualified and acted as executor of Fleet.
^Taking this, then, for granted, I shall proceed to consider the objections stated in the argument, to the decree of the Court below.
1. It is objected, that the bill does not charge M. Shearman as executor of Fleet: that he does not answer as executor: that the revival against his administrator gave him no notice, that the claim was made of him as representing an executor, and was therefore, a debt of the first dignity; and that having no such notice, at any preceding stage, the Chancellor ought not to have suffered (he exhibit which showed that M. Shearman qualified as executor of Fleet, to have been introduced at the hearing ; and erred in founding his decree upon that document.
With respect to the original bill, it must be recollected, that M. Shearman was the man charged with the fraud and imposition in obtaining the Deed and Will, and withholding the property under them. If these charges were true, he was liable, however he held the property. But further, the Will is made a part of the bill. By the Will, M. Shearman is named as executor. The Will, too, as set out, shows that a probate of it had been taken, and this could only be by the executor, or (on his renouncing the executorship) by an administrator with the Will annexed. Martin Shearman, in his answer, claims both under the deed and Will: admits himself in possession of the whole estate, real and personal, (a house excepted ;) states no renunciation of the executorship by himself, or qualification by another; and therefore, must be understood to admit himself in possession as executor, especially when the fact was, that he had Actually qualified as , executor. Holding thus as executor, and being thus liable, the suit was, on his death, revived against his administrator with the Will annexed, in the same plight and condition. He stood bound as representing an executor; and it was his" business to take'notice of all the debts, which his testator owed in that character, because the Law declares he shall pay them before any proper debt of the person he represents. Besides, the ^'notice and responsibility, thus thrown on the administrator, E- G: Shearman, by the Law, it is a fact apparent on the record, that the first step taken by the Chancery Court, after the Deed and Will were pronounced void, was, to order E. G. Shearman to render before the Commissioner; an account of the executorship of M. Shearman on the estate of Fleet. This gave him notice in fact, as well as in Law. The same order, also, of the Court of Chancery, directed him to settle before the same Commissioner, an account of his own administration on the estate of Martin Shearman; and in this settlement, the Commissioner refused to credit the administrator, by payments made towards the proper debts of Martin Shearman, because the debts • which M. Shearman owed as executor of Fleet, was of higher dignity; and there is no exception to this refusal of the Commissioner, on the ground that *611 the administrator had no notice that he was sued as the representative of Fleet’s executor. In the case, particularly, of a debt of nearly five thousand dollars, paid by E. G. Shearman on an execution against him, issued on a staybond, given by M. Shear-man to Dali, and for which the Commissioner refused him a credit; so far from objecting that he had no notice by the suit of the Plaintiffs, that he was charged as representing Fleet’s executor, he puts his right to that credit expressly on different ground; attempting to prove, that when Dali’s execution was levied, the weather and his health were so bad, that he could not possibly go to the Chancellor to injoin and stay the sale; which injunction must have rested on the ground, that the property was bound to pay the debt to Fleet’s estate first; because the administrator was bound as representing Fleet’s executor.
The ad i.inistrator, having thus, both in Law and in fact, received notice of the true character in which he was charged in this suit, could not be said to be surprised by the exhibition, at the hearing, of the document proving that M. Shearman had duly qualified as executor of Fleet; *nor did the Chancellor (in my opinion) err in receiving and acting upon that document.
The next objection is, that Martin Shear-man held nearly all the personal property, under the fraudulent Deed ; and as to this, he cannot be liable as executor of Fleet.
The first answer to this, is, that the fact is not so. There appears to have been no delivery of the property under the Deed ; and E- G. Shearman, when directed to settle the executorship of M. Shearman on the estate of Fleet, brings into the account all the slaves and other property contained in the Deed, and states them to be “the slaves belonging to the estate of Fleet,” and “sundry property that came to the hands of M. Shearman, executor of Fleet;” thus expressly acknowledging that M. Shearman held them, as executor under the Will. But, if M. Shearman had held under the fraudulent Deed, what would have been the consequence? In Chamberlayne v. Temple, 2 Rand. 384, and Beall v. Silver, 2 Rand. 401, it is decided, that if a man made a fraudulent Deed, and die, the fraudulent donee will be liable as executor *le son tort; but here, as the fraudulent donee was appointed executor by the Will, and qualified, he was a rightful executor, and would, I apprehend, in that character, be liable for what he held under the fraudulent Deed.
But, it is denied that M. Shearman ever was a rightful executor, and insisted that the distributees could not file a bill against an executor de son tort, but must have an administrator appointed, or the estate committed to the Sheriff. I consider it settled Law, that every executor regularly appointed by a Court having jurisdiction of the matter, is a rightful executor, while his commission lasts; and though a subsequent Will should be afterwards produced, or the Will under which the executor was appointed, proved to be a forgery; yet the acts done by the executor prior to such proof, will be valid, and he will be ^chargeable as executor for any assets, which had come to his hands. If authority were necessary in support of a position so plain, I would refer to the case of Allen v. Dundas, 3 Term Rep. 125, where the very point is discussed and decided.
In our case, M. Shearman was regularly commissioned as executor, by Lancaster Court, in which the Will was proved. Until he was displaced, no administrator could be appointed; nor could he be displaced but by a suit impeaching the Will. This suit was, therefore, properly brought by the heirs and distributees. They pray that the Deed and Will may be set aside, the land divided, and the personal estate distributed. It is admitted, that this was right, so far as related to the division of the land; but contended, that as to the distribution of the personalty, the bill was wrong: that it should merely have sought to set aside the Will; and then have left it to the administrator, (who should be appointed,) to have recovered the assets. By a reference to the case of Paul v. Paul, 2 Hen. & Munf. 525, it will be seen, that upon a bill brought to set aside a Will, the County Court, after pronouncing the Will void, go on to direct a distribution. The Decree was reversed by the Court of Chancery ; but, this Court reversed this last, and affirmed the Decree of the County Court; thereby sanctioning the order of distribution. In our case, it will be recollected, that after an administrator of Fleet was appointed, (which could only be done upon setting aside the Will,) that administrator was made a party to the suit. Here, then, were convened before the Court, all the parties interested; all praying the Court to proceed, and make an end of the matter; and I cannot conceive a solid objection to their doing so.
Taking the Defendant E. G. Shearman to be properly charged, and legally liable for the acts of M. Shearman as executor of Fleet, there can be no doubt, that under the express words of the Law, the debt incurred by Martin Shearman, as executor, is of the first dignity, and to be *paid by his administrator, before any proper debt of the said Martin. The Commissioner was therefore right, in reporting the full balance of 5,714, with interest, against the administrator; and the Court right in decreeing against him the same sum.
With respect to the sum decreed against E. G. Shearman individually, for the rents of the land and hires of the slaves received by him, after the death of M. Shearman, there was no objection taken at the bar; and properly, because this part of the account seems to have been admitted by E. G. Shearman before the Commissioner.
Upon the whole, I am for affirming the Decree.
JUDGE COALTER.
The only question in this case, arises out of the principle adopted by the Commissioner in his report, whereby the Appellant is charged with the greatest part of the demand of the Appellees, as a debt of the first dignity due from his testator, so as to exclude from his administration account, *612 debts to a large amount, which he had paid, and by which a devastavit is thus established on him by the Commissioner, and the final Decree in the cause.
The original bill was filed in this case, by the Appellees, against Martin Shear-man, the Appellant’s testator, alleging that they were heirs at law and distributees of John Fleet: that Fleet was a man of unsound mind, incapable of making contracts or a Will; and that shortly before his death, the Defendant had, by fraud, imposition and threats, obtained from him a Deed purporting to convey the whole of his property, for the consideration of $5,000; none of which was paid; and '"ad, about two months before, in order to fortify his title, also procured him to sign a paper purporting to be a Will, when he was utterly incapable of making one, which he had procured to be recorded in Lancaster Court in January, 1801, in consequence of no person appearing to contest it; although, if *the Deed had been valid, there could have been no necessity for. recording it, because it would have passed only the same property. This was not contested, they say, because many of the Plaintiffs then were, and some now are, infants, &c. They ask a Decree for their proportion of the lands, slaves, and other personal estate: that the Defendant may render an account of the slaves and hires, and of the rents of the lands, which came to his possession on the death of the said Fleet; and pay the same to them, &c. •
The Deed purports to bear date on the 25th of April, 1800, and conveys, for the consideration of $5,000, a tract of land of six hundred acres, ten slaves, by name, also twenty head of cattle, four horses, and a variety of household furniture, hogs, sheep, &c. This Deed was admitted to record in September, 1800, on the acknowledgment of Fleet in Court.
The Will purports to bear date on the 17th of February, 1800, giving all his estate both real and personal, to the said Shear-man, and appointing him executor. This was simply proved and admitted to record, on the 19th .of January, 1801. No one, at that time, however, appears to have qualified as executor.
The answer denies the fraud, and insists that Fleet was of sound mind when he made both the Deed and Will. It admits that the consideration in the Deed was not the real one, which was, that he was to maintain the grantor, &c. He denies that the Will was made, as was alleged in the bill, to fortify his claim under the Deed; but that, after the Deed was made, it was discovered by Fleet that there was a negro and some outstanding debts, which were not embraced by it; and it being the intention of the parties to the contract that all his property was to be conveyed, the Will was executed to cure this omission. He says, that the recording of the W’il was contested by some of the parties, and denies their right to come in to contest a Will three or four years more than seven (the time limited by Law) after it was recorded.
*Nothiug further was done in the case, until Martin Shearman’s death, which happened in 1814, except to take depositions.
In 1815, a bill of revivor was filed by the Appellees, to make the present Appellant, who was administrator with the Will annexed of Martin Shearman, a Defendant;: and also to make the devisees of the land in question, Defendants. This bill merely states, that the Plaintiffs had theretofore filed their bill against Martin Shearman, for the purpose of setting aside a Deed and Will for a tract of land lying in Lancaster, made, as was said, by John Fleet, in favor of the said Shearman, on the ground that they had been obtained by fraud, in which certain proceedings had been had, &c. t that he had since died: that the Appellant was his administrator, and the others, dev-isees of the land. They are made Defendants ; and the prayer is, that the suit may be revived and stand in the same plight, &c.
The Defendants answer, the one admitting that he was the administrator, and the others, the devisees; and agree to a revival.
After this, to wit, in May, 1817, an issue was directed to try the question of fraud, &c.; which was found in favor of the Ap-pellees, both as to the Deed and Will. The verdict was rendered on the 12th of April, 1820; and being certified to the Chancery Court, there was a Decree pronounced on the 27th of the same month, setting aside both Deed and Will, and directing various accounts, both as to the real and personal estate, a surrender of slaves, &c.
It may be proper here to remark, that on the death of Martin Shearman, the regular course would have been, to have had someone qualified as administrator of Fleet, so as to represent the personal estate. This was not done, however, and the bill of the revivor above noticed, seems in its terms, to limit the case, as to the Plaintiffs, to the controversy so far as it regarded the real estate: and it seems to me, that legitimately, whatever to the contrary might have been intended, the controversy between the parties then *before the Court, could only extend, so far as ultimate relief could be given, to the real estate. To be let in to the enjoyment of this, the heirs had a right to an enquiry into the alleged fraud, both as to the Deed and Will; for both must be set aside of nothing is gained. When they had succeeded as to both, they could only claim to be let into the enjoyment of the lands, and to have an account of the rents. All beyond this, could alone be claimed by the personal representative of Fleet. But no such representative was then before the Court, and none such existed. The Court, •however, in the same Decree which vacated the Deed and Will, directs accounts, and amongst others, an account of the administration of Martin Shearman, on the estate of Fleet, directing the Commissioner to comprise in such account, to the debit of the said Martin, the price of slaves, and all the personal estate (except the slaves that maybe surrendered under the Decree,) and that the said Martin claimed title to, by, or under the said papers; thereby, as it seems to me, very properly recognizing *613 only his title as purchaser or legatee, no claim or possession, as executor, having been suggested in any of the pleadings.
Accounts were also directed of the rents and profits of the land, both in the lifetime of the said Martin, and since; reserving liberty to those claiming to be heirs or distributees of Fleet, whether Plaintiffs or Defendants, to interplead, &c. with a view to a division or distribution of the real and personal estate.
The Commissioner reported, and, in taking the accounts of the Appellant’s administration, rejected his disbursements in payment of debts, so as to subject him, as aforesaid, for a devastavit. At the same time, and at the instance of the Appellant, he reported an account, according to his pretensions, allowing him those credits; ■and in this way, the point has been presented to the Court. In order to fortify these his pretensions, I presume, he files several depositions to prove, that when a large execution of one *Dall, which issued on what is commonly called a stay-bond, executed by Martin Shearman, as security for Edmunds the debtor, was levied, late in December, 1818, the weather was very inclement, and he confined to his house by indisposition, so that he could not travel to Richmond or Fredericksburg. Whether any resistance to the execution, which such a journey would have enabled him to make, or what kind of resistance was thought of, does not appear. 'The object of these depositions seems merely to be, to prove that if he could, in any way, have made resistance, it was then out of his power to seek advice concerning it.
It is pertinent to my view of this case, here to remark, that at the time this Decree was pronounced, there was not only a want of a personal representative of Fleet’s estate, but there had been no allegation in the pleadings or proceedings in the cause, that Martin Shearman had ever qualified as executor of Fleet. The original bill seems to negative such idea, by the allegation merely, that the Will had been obtained and recorded, for the purpose of fortifying the claim to the whole property, under the Deed; and is relied on as a circumstance of fraud in regard to that. There is nothing in the bill, charging any thing beyond a tortious intermeddling with the estate, on the pretence of a fraudulent Will. The bill of revivor seems also to-negative any pre-tence to charge his administrator for his •acts as executor, by confining the case to the land, as in Daw it was then confined.
The Chancellor’s Decree for account, it seems to me, therefore can only have gone on the ground, that as Martin Shearman was confessedly in possession of the whole estate, pretending to hold the greater part as purchaser, and the residue as legatee, and as those papers were both declared void, his estate should be answerable for the whole property, under whichever of those papers he claimed title; but, that however fraudulent ■or improper that possession was, yet a Court of Equity would allow him all just disbursements.
*It is true, that in the final Decree it is stated, that an exhibit was then before the Court, showing that he had qualified as executor; but at what time, does not appear; nor do we know when this exhibit was filed. It is not now in the record. The copy of the Will, with the certificate of the proof of it, shows that he did not qualify as executor when the Will was proved; and it is highly probable, that when the bill was filed, and probably not until long after, it was not known to the Plaintiffs that he ever had qualified, as executor, and that, therefore, he was not charged by them in that character. It is not improbable, howeyer, that when about to take the accounts, search may have been made as to the credits collected by him, and his qualification then discovered, and the document produced to the Commissioner,'as has been suggested at the bar; who thereupon took the áccount in the manner aforesaid. Be this as it may, the report of the Commissioner, and this document, presented the question to the Chancellor on the final hearing, and he supported the Commissioner. I shall therefore consider the case, as if there was a document now in the record, proving that he did qualify as executor.
There is also another circumstance belonging to the statement of the case. The report and account were returned in February 1821; and in May following, the Plaintiffs had leave to file a supplemental bill, for the purpose of making one Armstrong, who was agent for a number of them in prosecuting the suit, a Defendant; alleging, that since the last continuance, he had taken administration on the estate1 of Fleet. This was done after the accounts were taken, as aforesaid, and preparatory to a final Decree. The bill was in fact filed at the same term the final Decree was pronounced. It alleges that the Plaintiffs are advised, that it is necessary to make him a Defendant, that a Complete Decree may be made, binding the rights of all parties. They agree, that any part of the estate, necessary for his administration, may be decreed to him, subject to their eventual rights as distributees ; and if none is necessary, *but if he is willing that an immediate distribution may be made, that the same may be decreed, &c. referring to the preceding proceedings.
To this bill, that Defendant answered instanter. He admits the statements it contains, and adopts all the proceedings in the suit, agreeing to be bound thereby, and agrees that distribution may be made.
In this way, and at this time, the personal representative of Fleet is finally brought into this cause. Up to this time, then, there is not only an absence of any charge in the bills of proceedings, setting out a claim against the Defendant, as representing an executor, but there was no party to the suit that could regularly"make any such claim, which could at all affect the question under consideration. For, although Martin Shearman’s estate would be answerable for the rents of the land, and to which alone the Plaintiffs were then entitled, it is admitted on all hands, and so decreed, that the occupation of the land *614 was not as executor, and consequently, that rents and profits would not be considered a debt of the first dignity, under the Act, but only payable when assets.
Although Martin Shearman, then, may have committed a fraudulent spoliation on the rights and properties of these parties; yet, unless the Appellant has also been guilty of improper conduct, it can only be strict Law which will remunerate them therefor, out of the estate of an innocent mán.
This statement of the case presents two questions:
1. Was Martin Shearman a qualified executor as to the personal estate comprised in the Deed, within the meaning of the Act of Assembly, 1 Rev. Code, 389, which declares, that executors or administrators of any person who shall have been chargeable with the estate of a dead person, committed to their testator or intestate, by a Court of Record, shall pay so much as shall be due from their testator or intestate to the ward, idiot or lunatic, or to the legatees or persons entitled to distribution, before any proper debt of their testator or intestate?
*2. If an account of this part of the estate could have been claimed and charged on the estate of Martin Shearman, as a debt of the first dignity, so as to take precedence of other proper debts of his, and to charge his-administrator for a dev-astavit in paying such other proper debts, can such pretension be supported under the bill and proceedings above stated?
The Act of Assembly, I presume, must have intended one of two or three things; either that an executor or administrator, of an executor, administrator or guardian, &c. is bound to take notice of every case in which his testator or intestate acted in such fiduciary character, and must likewise be presumed to have knowledge of the state of the accounts, and whether’any thing is due or net, and also of all claims which may, by possibility, be asserted in consequence of such trust: or, that he shall only be bound to take notice of such trusts as shall be actually made known to him, together with the extent and nature of the claim, by suit or otherwise; or, if he is bound to notice the trust itself, as one committed by a Court of Record, he is not bound to notice any claim, which may be asserted by the cestui que trusts, unless in cases where accounts have actually been settled by the Court, and made a matter of record, showing monies due; or, unless a specific claim has been made, by suit or otherwise, in such a way as to show that the claim is one within the Act.
It has been thought rather a hard case, that executors or administrators shall be bound by, and obliged to take notice of, all Judgments, wherever rendered within the State, though they are not only matters of record’ but show precisely what is due, and enable the executor at once to defend himself against claims of inferior dignity-. But where, so far from there being a Judgment to guide him, there is not even notice by suit or otherwise, actually given, either that there was such trust in relation to the matter claimed, or that there had been a breach of that trust in whole or in part, it would seem to me an intolerable: hardship, to make *the executor or administrator answerable, as he would be to judgment creditors. If you do> this, you ought to extend to him the correlative benefit of pleading this trusteeship,, and all possible claims arising under ft, as a bar to all other actions, until such claims shall be exhibited and adjusted. All this would be monstrous, and was never intended by the Law. A trust of this kind may even be settled up by the Court, and the amount paid accordingly, but that account may afterwards be surcharged and set aside, and a much larger sum found due; but, before such claim is made known, the executor or administrator of the trustee may have paid his proper debts. It cannot be, that this is a devastavit under the Act.
If actual notice of the breach of trust,, then, is necessary to be given in some way or other, this of course involves notice of-the trust itself, and consequently, implied notice of it is not necessary to be inferred, in order to effect the purposes of the Law,, as it is in case of Judgments; unless, indeed, it should be in the case I have above-put, of a settlement of accounts, showing a: particular balance, returned to Court and made a matter of record. As to this, I give no opinion. But it seems to me, that where the case depends on actual notice of the claim, the party cannot derive aid from, any implied notice in Law, so as to charge’ another beyond the actual notice given. The notice given ought to show the nature- and extent of the claim; and the party ought not to be permitted afterwards, by evidence or otherwise, to vary it so as to have a retrospective operation. The nature of the claim, as first announced, is that to which the attention of the executor or administrator is drawn; and he proceeds accordingly. The claim, for instance, as originally made, is, in substance, a charge of a trover and conversion by the testator or intestate, of the goods of the deceased. But, it turns out afterwards, that he held them as executor or administrator or guardian, and had not accounted for them. In the mean time, his executor or administrator has paid debts, &c. Is *he bound to know contrary to the claim set up, that this is a trust fund, within the Act? And can he defend himself against other creditors on this ground? It seems to me not.
In general, then, before an executor or administrator or guardian, &c., can be subjected to a devastavit under the Act, he must have actual'notice of the nature and extent of the claim, and that it is a charge which pertains to the fiduciary character of his testator or intestate.
The fair way, then, and the most, it seems to me, that can be asked by the Ap-pellees, is to examine this case precisely as if this suit had, for the first time, been instituted at the time the bill of revivor was filed : that the administrator de bonis non of Fleet had united with the heirs at law in the bill; and that it had been couched in the same language, making the same charges, and no more, than those *615 contained in the original bill above referred to.
The question then recurs, is the personal estate conveyed by the Deed, and held and claimed by Martin Shearman under it, as a purchaser thereof for value, a portion of the estate of Fleet, committed to him by a Court of Record, and which can be charged on his estate as a claim of the first dignity, under any bill that could have been filed in the cause? Would he have been bound by his oath, even if his claim was under a voluntary Deed, to make an inventory and appraisement of these goods, as of the goods of Fleet? I presume not. No one could have claimed this of him. The Court would not estimate his risque by its value. If there was not enough besides for the payment of debts, creditors could resort to this fund for that purpose; but, the Deed would only be void as to them. Actual fraud, as to them, would not be necessary. It would be enough that the Deed was voluntary. They can go against the fund, whether the volunteer is executor or not. The executor or administrator cannot sue the volunteer to set aside the voluntary Deed, in order to pay debts. It is no part of their duty, because it is no *part of the estate committed to them; and if it is not in this case, I cannot see how it would be, if the executor or administrator was himself the donee. If he makes an inventory of it as part of the estate, it must be subject to distribution, as well as to payment of debts.
But this is not a case of creditors. It is a claim by an administrator and distributees, in which it is not enough to show the Deed voluntary; actual fraud in obtaining it, must be the ground of the claim. And though this ground of claim goes to show, that as well as it regards creditors as dis-tributees, no title passed: but that as to both, the goods, are to be treated as the goods of Fleet; yet, I have not been able to perceive how this will vary the case from that of a mere voluntary Deed, above put. In some respects, it seems to me to be a stronger case than that, in favor of the opinion I have advanced as to it. I can see no reason why, as to creditors, actual fraud shall make it a part of the estate committed by the Court, if the voluntary consideration or legal fraud would not. But, it is the estate of the deceased, because he to whom the estate of the deceased is committed has faudulently obtained a Deed, vesting the legal title to it in him, before the death of him to whose estate it is said to belong. Suppose, when Martin Shearman qualified, the Court had been told by the Appellees, “This man holds the greater part of the estate of Fleet under a Deed obtained by fraud, and we intend to sue to set it aside, and now desire you to direct the appraisement of that property, and to take security for its amount.” Could the Court have done either? It seems to me not. But would Shearman be bound to render an inventory, and thereby accuse himself of the alleged fraud? Surely not. When, then, does it again become part of the estate of Fleet? Not until the moment when the Deed is vacated; and even if this had been done in the life-time of Martin Shear-man, and if there had been no Will also giving it to him, but he had been administrator, I would pause before I would say, that his sureties should *be responsible for it. But, in this case, and as to these parties, both Deed and Will must be set aside, or nothing is done; and had that taken place in the life-time of Martin Shearman, the very act which made this property again a portion of Fleet’s estate, would have virtually annulled all his power over it as executor. But, this Decree was not in the life-time of Martin Shearman. When he died, the legal estate was in him; and his administrator was bound to give security to its extent, to return an inventory of it, and to pay debts, &c., accordingly. From this latter, he will be excused, However, as soon as these goods are recovered from him, by those having a paramount title. This has been done, and they have got possession.
During his possession, then, and during his life, the legal title was in Martin Shearman, not as executor, but under the Deed. This state of things continues until the Decree. Dp to that time, they are a part of Martin Shearman’s estate, and liable for his debts. How then can it be said, that they were committed to him by a Court of Record, as part of the estate of Fleet?
For these reasons, as at present advised, I think that no bill could have been framed, so as to bring this case within the Act of Assembly. The necessary charge, in this case, of actual fraud in getting the legal title from one who did not intend to convey it, or was incapacitated to do so, is a charge which admits the legal title in him, but which seeks to avoid it. It charges an act in the nature of a tort by which an injury has been done; and, when prosecuted against Martin Shearman alone, it is only charged as a personal injury of this kind, as a fraud subjecting him to certain consequences; not as a violation of his duty as an executor, in not returning an inventory, and rendering an account of his property. If apprehensions had been entertained that he would remove the slaves, and an injunction or sequestration had been asked, would it have been refused because the sureties in the exec-utorial *'bond would be liable? I presume not; even if it had appeared in the bill, that he had qualified as executor. It is to the consequences arising from this fraud, then, that the estate of Martin Shearman is liable; and I have therefore been unable to perceive, how it could have been charged, as arising from his acts as executor, in relation to property committed to him, as such, by a Court of Record.
But, if it could have been so charged, it has not been; and if the administrator ought to have notice of the claim, so as to justify him in withholding the assets from other creditors, it ought to be so given or charged, I presume, that he would not only have notice that the demand was claimed as one of the first dignity, but presented in such a shape, that he might plead its pendency, in bar of debts of inferior degree. But, the bill treats the case simply *616 as one of the nature I have above described, simply as a tortious possession under a fraudulent Deed and Will. The bill, in fact, was against Martin Shear-man himself, filed in a case, in which, if he could have been charged as executor, in regard to this part of the estate, he was not so charged, and in which the party had a right to waive charging him as .executor, had a right to exonerate his sureties, and to look to him personally, from the consequences of a fraud committed by him, before he was executor, and for which they could equally charge him, whether he had ever qualified as executor or not.
If a doubt had existed, whether the bill could have been filed in any other shape, the party had a right not to risque the consequences of that doubt, of a demurrer to his bill, &c. He had a right to go against Martin Shearman alone, in his individual character. If he did this from ignorance that he had qualified as executor, it is the same thing. That might have led to an amended bill, if indeed, it could have been amended. But, then, it could not have operated retrospectively, so as to make previous payments a devastavit. The bill was originally filed as a mere individual charge against Martin Shearman. No other *part of the . pleadings has changed the nature of that charge; nor is any thing to the contrary' perceived in the case, until the Decree vacating the Deed and Will. But even this, as I have above stated, does not seem to me necessarily to involve that question. If it does, however, the payments which have been rejected by the Commissioner, were all before that Decree.
On the whole, though I am not without my doubts, I cannot vote in support of this Decree subjecting this administrator to a devastavit. That, I believe, is the only point in contest. At .all events, I do not perceive any other error.
The PRESIDENT.
My first impression of this case was, that the objections urged by Counsel to the Decree might be obviated by a minute attention to the pleading and facts in the record; but on a full examination of them, I have come to a different conclusion. The proceedings, nether expressly nor by in-tendment, exhibit any claim against E. G. Shearman administrator of Martin Shear-man, who was executor of John Eleet; but charge him solely as administrator of Martin Shearman. The bill recites the Will of Fleet, but founds no claim on it, as its object was to set it aside, as well as the Deed ; and though it be admitted, that E. G. Shearman had notice of the probate, and must be presumed to know that Martin Shearman, his testator, was the rightful executor of Fleet until the probate was repealed, no claim, founded on these facts, is exhibited against him in any of the pleadings. Nor do I think that his admissions (in the character of administrator of Martin Shearman, in which he is-charged) on the adjustment of the accounts directed by the Chancellor, can obviate that objection; as the credits claimed by him, for the payment of the proper debts of Martin Shearman as his administrator, including Dali’s debt, were anterior in date to these ^admissions before the Commissioner. There is nothing in his admissions, therefore, to deprive him of the right to insist, that until suit was brought against him as the administrator of Martin Shearman who was executor of Fleet, claiming the balance due by his testator to Fleet’s estate by the personal representative of Fleet, he could not resist the claims of Martin Shearman’s proper creditors, on the ground that that balance, whatever it might be, was a debt of superior dignity ro theirs. Such a pretence would delay, infinitely, the creditors of every one who was executor or administrator, and lead to great frauds.
But, in another point of view, E. G. Shearman, ought to have been allowed the credits claimed bv him as administrator of Martin Shearman. The bill was brought to set aside the Deed and Will of Fleet, as fraudulent. It is admitted, that the Deed included all the property of Fleet, except an inconsiderable part of it, which passed by the Will. Until the Deed and Will were set aside by the Chancellor, Martin Shear-man was in possession of the property included in them, according to their tenor and effect. When he qualified as executor of Fleet, he could not be said to be in possession of the property included in the Deed, as executor of Fleet, but in his own right, such as it was. As to that property, he could not have been required to give security by the Court of Probate, but as to the property in the Will only. That he • might have been charged as executor in his own wrong, as regarded the property in the Deed, if he had lived until it was set aside, is admitted; but he died before that event; and his administrator can, I think, only be charged as representing him as executor de son tort, as regards the property in the Deed. In relation to it, a debt due by Martin Shearman to the representatives of Fleet, was a proper debt of his own, and not of no higher dignity than any simple contract debt. If the bill and pleadings in the cause, therefore, had charged E. G. Shearman, as administrator of Martin Shearman, the rightful executor of Fleet, the *property in the Deed could not have been charged to him in that character. As regarded the property in the Will, the proceedings have been very irregular. To have attained the object of the bill, after the death of Martin Shearmau, the personal representative of Fleet ought, by supplemental bill, to have been made a party, and on his answer, coming in, an order to settle the accounts should have conformed to the different responsibilities of E- G. Shear-man, charged in the supplemental bill.
In every point of view, therefore, E. G. Shearman, when he was accounting both for the property in the Deed and Will, ought to have been allowed a credit for the payment of the proper debts of Martin Shearman, either as his representative as executor de son tort, as to the property in the Deed; or as rightful executor of Fleet under the Will.
I think the Decree, therefore, is erroneous *617 in not allowing him these credits; and so much ought to be reversed; and there is no substantial objection to the residue, it ought to be affirmed.

Judgbs Green and Cabell, absent.